UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **JOHN EDWARD GOLDEN,** | ) | **Case No. 13-24468-HRT** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| **HARVEY SENDER, Chapter 7 Trustee,** | ) | **Adversary No. 14-1523-HRT** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DOLORES GOLDEN,** | ) | |
| | ) | |
| Defendant. ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on Defendant Dolores Golden's Motion to Dismiss (docket #5) and Plaintiff Chapter 7 Trustee's Motion for Summary Judgment (docket #7). This Court has also reviewed and considered Plaintiff's Objection to Defendant's motion (docket #6). The Court will grant Defendant's Motion to Dismiss and deny Plaintiff's Motion for Summary Judgment.

## I. FACTS

On August 23, 2013, John Edward Golden ("Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On his Schedule C, Debtor claimed as exempt $9,361.00 in equity in his homestead which was, at that time, jointly owned by Debtor and Defendant.

On March 18, 2014, Debtor's Second Amended Plan was confirmed. Section VI of the confirmed plan provided that all property of the Chapter 13 estate revested in Debtor upon confirmation. Additionally, Section VI made clear that payments would be made to creditors secured by the home outside of Debtor's plan.

Post-confirmation, Debtor and Defendant sold the real property listed as the homestead on Schedule C. Apparently, the home appreciated in value post-petition and the total net proceeds from sale were $33,169.42 after satisfaction of liens and costs of sale. After the sale,

Debtor transferred his portion of the proceeds to his wife, from whom he is currently separated. The Defendant wife characterizes the transfer as being in the nature of prepaid child support. However, the Defendant is not listed on the Debtor's schedules as a child support creditor and the Defendant has not alleged the existence of a court order establishing a child support obligation. Debtor did not seek Court authorization either for the sale or the transfer of funds.

Thereafter, Debtor filed a motion to convert the case from Chapter 13 to one under Chapter 7. Without objection, this Court granted that motion and the case was subsequently converted.

Plaintiff, the Chapter 7 Trustee, filed this adversary proceeding under 11 U.S.C. § 549(a) in an attempt to avoid the post-petition, pre-conversion transfer of funds from Debtor to Defendant. Defendant subsequently moved to dismiss. In Plaintiff's Objection to Defendant's Motion to Dismiss and Motion for Summary Judgment, Plaintiff, for the first time, objected to Debtor's claim of exemption in proceeds from the sale of the homestead.


## II. LEGAL STANDARD

Rule 12(b)(6) allows a party to file a motion to dismiss for failure to state a claim upon which relief may be granted.[1] Under Rule 12(d), however, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[2]

Defendant's motion to dismiss referenced documents outside the four corners of Plaintiff's complaint. Accordingly, the Court will treat Defendant's motion as a motion for summary judgment.

A motion for summary judgment will be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of proof with respect to entitlement to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe all evidence "in the light most favorable to the party opposing summary judgment." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601 (1986).


## III. DISCUSSION

### A. Plaintiff's Claim for Relief Under 11 U.S.C. § 549(a)

Section 549(a) provides that a trustee may avoid a post-petition transfer of property of the estate that is not authorized by the Bankruptcy Code or by the court. 11 U.S.C. § 549(a). The question presented is whether the proceeds from the sale of Debtor's homestead constitute

---

[1] Fed. R. Civ. P. 12(b)-(i) are made applicable by Fed. R. Bank. P. 7012.
[2] Fed. R. Civ. P. 12(d). *See In re Gazzo*, 505 B.R. 28, 33-034 (Bankr. D. Colo. 2014) (treating a motion to dismiss as one for summary judgment because the motion included an affidavit and an order of a domestic court).

property of the estate. If the proceeds are property of the estate, Plaintiff is entitled to avoid the post-petition, pre-conversion transfer of such proceeds from Debtor to Defendant. The Court finds that the proceeds are not property of the bankruptcy estate and therefore grants Defendant's Motion to Dismiss.

*1. Property of the Estate Revested in Debtor Upon Confirmation of the Chapter 13 Plan*

Upon plan confirmation, all property of the estate revests in the debtor. 11 U.S.C. § 1327(b). This is so unless the plan or the order of confirmation provides otherwise. *Id.* The Bankruptcy Code, however, does not define what it means for property to "vest."

When statutory terms are undefined, they are to be given their common and ordinary meaning. *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010). Black's Law Dictionary defines "vest" in four ways, three of which are relevant here: "1. To confer ownership (of property) on a person. 2. To invest (a person) with the full title to property. 3. To give (a person) an immediate, fixed right of present or future enjoyment." Black's Law Dictionary (10th ed. 2014).

In accordance with the Black's Law Dictionary definition of "vest," when the homestead revested in the Debtor upon plan confirmation, ownership of the property left the estate and vested in the Debtor. *See In re Jones*, 420 B.R. 506, 515 (B.A.P. 9th Cir. 2009) *aff'd on other grounds*, 657 F.3d 921 (9th Cir. 2011) ("We conclude that 'vests' means absolute ownership, not mere possession."); *In re Clouse*, 446 B.R. 690, 699 (Bankr. E.D. Pa. 2010) ("Because a Chapter 13 debtor has the right to possess property of the bankruptcy estate from the inception of the case, vesting must mean 'transferring absolutely' or it means 'nothing at all.'"). When property revests in the debtor under Section 1327(b), the debtor "acquires something more than possession, which he held at the inception of the case under § 1306(b)."[3] The "something more" that the debtor enjoys, therefore, is "absolute ownership and control of the property."[4]

This proposition is supported by the use of the term "vesting" in other areas of the Bankruptcy Code. First, Section 349(b)(3) states that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). One court concluded that "'revest' under Section 349(b)(3) must mean the absolute transfer out of the estate of whatever interests which become property of the bankruptcy estate . . . ." *In re Van Stelle*, 354 B.R. 157, 167-68 (Bankr. W.D. Mich. 2006). Second, Section 362(b)(9)(D) states that post-petition tax liens can attach to property of the estate when "such property or its proceeds are transferred out of the estate to, or otherwise revest in, the debtor." 11 U.S.C. § 362(b)(9)(D). Congress's specific use of the words "transfer" and "revest" therefore suggest "an absolute and unconditional conveyance of the subject property from the bankruptcy estate to the debtor." *In re Van Stelle*, 354 B.R. 157, 168 (Bankr. W.D. Mich. 2006). *See also Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) (presumption exists that "identical words used in different parts of the same act are intended to have the same meaning").

---

[3] *In re Wei-Fung Chang*, 438 B.R. 77, 80 (Bankr. M.D. Pa. 2010).
[4] *Id. See also In re McKnight*, 136 B.R. 891, 894 (Bankr. S.D. Ga. 1992); *In re O'Brien*, 181 B.R. 71, 74 (Bankr. D. Ariz. 1995).

Over the years, the construction of Section 1327(b) has generated a good deal of discussion in the case law. Four different approaches have emerged as to what constitutes property of the estate after confirmation of a Chapter 13 plan. The approaches are: 1) estate preservation, 2) modified estate preservation, 3) estate transformation, and 4) estate termination. All but the estate preservation approach "are based on the principle that property of the estate revests in the debtor upon plan confirmation, unless the plan provides otherwise."[5]

The estate preservation approach holds that the Chapter 13 estate continues in all estate property notwithstanding the revesting provision in Section 1327(b).[6] Courts following the modified estate preservation approach hold that, upon confirmation, all estate property vests in the debtor, but property acquired after confirmation is included in the estate.[7] Under the estate transformation approach, post-confirmation estate property includes only such property as is necessary to fulfillment of the Chapter 13 plan.[8] The estate termination approach holds that upon confirmation, all estate property revests in the debtor, including any property acquired post-confirmation.[9]

Under the present facts, only the estate preservation approach would alter the ultimate outcome of the case. That approach, however, has not been adopted by the Tenth Circuit. In the case of *U.S. v. Richman (In re Talbot)*, the trustee sought disgorgement of funds paid to the I.R.S. to satisfy its tax lien following the post-confirmation sale of the debtor's home. 124 F.3d 1201, 1205 (10th Cir. 1997). In support of disgorgement, the trustee argued that the home was property of the bankruptcy estate. *Id.* at 1206. The court rejected that argument because, under Section 1327(b)'s revesting provision, the property was not property of the bankruptcy estate after plan confirmation. *Id.* at 1208. *See also In re Segura*, 2009 WL 416847 at *6 (Bankr. D. Colo. 2009) (adopting the "estate termination approach" to determine that all property of the estate revests in the debtor upon confirmation of the Chapter 13 plan). In *In re Vitt*, the court found that property of the estate after confirmation of the Chapter 13 plan includes such funds and property as are necessary to fulfillment of the plan. 250 B.R. 711, 718-19 (Bankr. D. Colo. 2000) *aff'd and remanded sub nom. Manion v. Providian Nat. Bank*, 269 B.R. 232 (D. Colo. 2001). *In re Vitt* does not change the outcome of the case at hand because the home was never a source of payment; instead, plan payments were based on the Debtor's disposable income. *See* Debtor's Amended Plan at 7. Accordingly, the property was not necessary to fulfillment of the Debtor's Chapter 13 plan.

Section VI of the Debtor's Second Amended Plan includes a provision making clear that property of the estate revested in the Debtor upon confirmation. *See* Debtor's Amended Plan at 8. The plan was confirmed on March 18, 2014, without modification. *See* Order Confirming Amended Chapter 13 Plan. Consistent with the reasoning of *In re Talbot*, the home was no longer property of the Chapter 13 estate upon confirmation of the Debtor's plan. The Debtor, therefore, enjoyed full ownership and control over the property after the date of confirmation.

---

[5] *In re Jones*, 657 F.3d 921, 927 (9th Cir. 2011).
[6] *Id.* at 928.
[7] *Id.* at 927-28.
[8] *Id.* at 928.
[9] *Id.*

4

### 2. *Debtor Was Not Obligated to Maintain Possession of the Property*

Plaintiff contends that 11 U.S.C. § 1306(b) required the Debtor to remain in possession of all property of the Chapter 13 estate. This is true unless the plan or order of confirmation provides otherwise. 11 U.S.C. § 1306(b). Because the revesting provision of Debtor's Second Amended Plan and Section 1327(b) provide that estate property revested in Debtor upon confirmation of the plan, the Debtor was not obligated to maintain possession of the property. Instead, the real property was owned and controlled by the Debtor and the Defendant and was no longer subject to administration by this Court.[10]

### 3. *The Homestead Was Not Property of the Estate in the Converted Case*

Property of the estate vests in the debtor upon confirmation of a Chapter 13 plan. 11 U.S.C. § 1327(b). Pursuant to the revesting provision of Section 1327(b), upon confirmation, the debtor enjoys full ownership and control over such revested property. Section 1327(b), however, must be reconciled with Section 348, which mandates the effect of conversion. Section 348(f)(1)(A) provides that when a Chapter 13 case is converted to Chapter 7, property of the estate in the Chapter 7 case includes "property of the estate, *as of the date of the filing of the petition, that remains in the possession or is under the control of the debtor on the date of conversion*" (emphasis added).

Based on the Black's Law definition of "revesting," the Ninth Circuit concluded that the automatic stay did not apply to property that revested in the debtor upon confirmation of the Chapter 13 plan. *Cal. Franchise Tax Bd. v. Kendall (In re Jones)*, 657 F.3d 921, 928-29 (9th Cir. 2011). *See also In re Van Stelle*, 354 B.R. 157, 168 (Bankr. W.D. Mich. 2006) (finding that the term vest in Section 1327(b) means "an absolute transfer of the bankruptcy estate's interest in property"). *But see In re Brensing*, 337 B.R. 376, 383 (Bankr. D. Kan. 2006) ("Section 1327(b) does not operate to remove property of the estate from the bankruptcy estate but merely places control of this estate property in the debtor pending conclusion of the Chapter 13 proceedings."). In this Court's view, the interpretation of Section 1327(b) found in *Brensing* renders Section 348(f) meaningless. *See* 11 U.S.C. § 348(f)(1)(A). If a debtor is charged with maintaining possession of property of the Chapter 13 estate despite the revesting provision, Section 348(f) is superfluous and unnecessary because all property of the estate as of the petition date would remain estate property in the converted case due to the debtor's continued possession of such property. This Court declines to adopt an interpretation of Section 1327(b) that renders Section 348(f)(1)(A) a nullity.

There is no question that the homestead was property of the Chapter 13 estate on the date of the filing of the petition. Post-confirmation, Debtor and Defendant chose to sell the home and reap proceeds in the net amount of $33,169.42.[11] Debtor subsequently relinquished possession or control of his portion of the proceeds from sale by transferring such proceeds to Defendant. This

---

[10] *See generally In re Brown*, 375 B.R. 362, 382 (Bankr. W.D. Mich. 2007) (where property of the Chapter 13 estate revested in debtor upon confirmation, such property "was no longer subject to administration" by the bankruptcy court upon conversion of the case to Chapter 7). *See also In re Krick*, 373 B.R. 593, 607 (Bankr. N.D. Ind. 2007) (upon conversion from Chapter 13 to Chapter 7, "creditors should benefit from the circumstances that existed on the date of the filing of the Chapter 13 case, subject to the freedom provided by § 1327(b) for the debtor to treat his/her/their property as her/his/their own without court intervention at every turn").

[11] Debtor's portion of such proceeds was $16,584.71.

action did not violate Debtor's Second Amended Plan, the Order Confirming Debtor's Second Amended Plan, or any applicable provision of the Bankruptcy Code. On the date of conversion, Defendant, not the Debtor, was in possession and control of the proceeds. Section 348(f), therefore, does not operate to pull such proceeds into the Chapter 7 estate.

A claim under Section 549(a) can only survive if the property transferred is property of the bankruptcy estate. The homestead was not estate property after the date of plan confirmation. Instead, it was fully owned and controlled by the Debtor and the Defendant. Furthermore, the Debtor had no obligation to maintain possession of the property due to the effect of revesting upon confirmation. Finally, the home was not property of the Chapter 7 estate. Accordingly, Plaintiff's claim for relief under Section 549(a) must fail and Defendant's Motion to Dismiss must be granted.

## B. Plaintiff's Claim that the Proceeds Are Not Exempt Fails as Untimely, as Moot, and Because the Home Was Exempt as of the Filing of the Petition

As to these homeowners, Colorado law provides a homestead exemption of up to $60,000 in equity. Colo. Rev. Stat. § 38-41-201(1)(a). Proceeds from the sale of a homestead are likewise exempt for a period of two years if they are kept separate and identifiable. Colo. Rev. Stat. § 38-41-207. Plaintiff argues that the Debtor lost his right to claim the proceeds from the sale of his homestead as exempt by transferring such funds to the Defendant instead of keeping them separate and identifiable within the meaning of the applicable statute.

Plaintiff's objection must fail as untimely. Even if it was filed in a timely manner, the objection would still fail as moot because the homestead revested in the Debtor upon confirmation of the Chapter 13 plan. Finally, Plaintiff's objection fails because the home was not estate property at the time of the post-confirmation sale.

### 1. Plaintiff's Claim is Untimely

It is well established that entitlement to exemptions is determined on the date of bankruptcy. *See* 11 U.S.C. § 522(b)(3)(A); *In re Mayer*, 167 B.R. 186, 188 (B.A.P. 9th Cir. 1994). Section 348(a) provides that conversion of a case "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief" and does not change that outcome. 11 U.S.C. § 348(a). At the commencement of the case, a debtor must file a list of all property the debtor intends to claim as exempt. 11 U.S.C. § 522(*l*). Objections to such exemptions are due within thirty days of the conclusion of the meeting of creditors. Fed. R. Bankr. P. 4003(b)(1). Absent a timely objection by a party in interest, the property listed as exempt is deemed exempt. 11 U.S.C. § 522(*l*).

On his Schedule C, Debtor claimed as exempt $9,360.00 in equity in his homestead. The home subsequently appreciated in value and Debtor and Defendant sold the property and obtained $33,169.42 in proceeds after satisfaction of liens and costs of sale, which exceeded Debtor's claimed exemption by $23,809.42. At least one court concluded that a trustee has no duty to honor exemptions improperly scheduled by a debtor. *See generally In re Wisdom*, 478 B.R. 394, 398 (Bankr. D. Idaho 2012) aff'd, 490 B.R. 412 (D. Idaho 2013). Pursuant to Rule 1009, however, a debtor may amend his schedules at any time before the case is closed. Fed. R. Bankr. P. 1009(a). Accordingly, this Court does not find it necessary to adopt the restrictive view

set forth in *In re Wisdom*. Additionally, both the number in Debtor's schedules and the amount of proceeds actually obtained are within the statutory maximum allowed under Colorado law. *See* Colo. Rev. Stat. § 38-41-201(1)(a). Finally, Debtor is entitled to any post-confirmation, pre-conversion appreciation in value of the property claimed as exempt. *See generally In re Niles*, 342 B.R. 72 (Bankr. D. Ariz. 2006) (although the proceeds from the post-confirmation, pre-conversion sale exceeded the statutory maximum of the homestead exemption, such proceeds belonged to the debtor because confirmation revested estate property in the debtor). *See also In re Slack*, 290 B.R. 282 (Bankr. D. N.J. 2003) (post-confirmation, pre-conversion appreciation in value was not property of the estate in the Chapter 7 case because, in the converted case, property was valued as of the date of the filing of the petition pursuant to 11 U.S.C. § 348(f)(1)(B)); *In re Wegner*, 243 B.R. 731 (Bankr. D. Neb. 2000) (same).

By way of background, prior to 2010, courts disagreed as to whether the Chapter 7 trustee may object to the debtor's claimed exemptions after conversion from Chapter 13.[12] That disagreement may be summarized as follows.

A minority of courts allowed the Chapter 7 trustee thirty days from the date of the 341 meeting in a converted case to object to the debtor's claimed exemptions.[13] These courts generally reasoned that 11 U.S.C. § 348(a) states that conversion from Chapter 13 to Chapter 7 "constitutes an order for relief." An order for relief requires the commencement of a meeting of creditors. 11 U.S.C. § 341(a). As Rule 4003(b) requires objections to exemptions to be filed within thirty days after the last day of the meeting of creditors, these courts found that the Chapter 7 trustee had thirty days from the meeting of creditors in the converted case to file exemption objections. *See In re Campbell,* 313 B.R. 313, 318 (B.A.P. 10th Cir. 2004).

The majority view, however, held that the time to object to claimed exemptions expires forever thirty days after the last day of the meeting of creditors in the original case.[14] These courts generally argued that the question "arises from the lack of clarity in Rule 4003(b) whether the 'meeting of creditors' referred to in this rule is the original meeting of creditors in the Chapter 13 case, or the meeting scheduled after conversion in the Chapter 7 case."[15] Rule 2003(a) requires a meeting of creditors after the order for relief. When read together with 11 U.S.C. § 348(a) which states that conversion constitutes an order for relief, the Chapter 7 trustee in the converted case must also conduct a meeting of creditors.

Also, pre-2010, Rule 1019(2) set forth new filing periods for certain actions in a converted case,[16] but did not provide a new period for objecting to exemptions. Thus, courts

---

[12] *See In re Campbell*, 313 B.R. 313, 317-18 (B.A.P. 10th Cir. 2004).

[13] *See In re Campbell*, 313 B.R. 313, 318 (B.A.P. 10th Cir. 2004) (adopting the minority view). *See also In re Alexander*, 236 F.3d 431, 432-33 (8th Cir. 2001); *Weissman v. Carr*, 173 B.R. 235, 237 (M.D. Fla. 1994); *In re Mims*, 249 B.R. 378, 383 (Bankr. D.N.J. 2000); *In re Jenkins*, 162 B.R. 579, 581 (Bankr. M.D. Fla. 1993).

[14] *See In re Campbell*, 313 B.R. 313, 318 (B.A.P. 10th Cir. 2004). *See also In re Ferretti*, 230 B.R. 883, 891 (Bankr. S.D. Fla. 1999) *subsequently aff'd sub nom. Dibraccio v. Ferretti*, 268 F.3d 1065 (11th Cir. 2001); *In re Rogers*, 278 B.R. 201, 204 (Bankr. D. Nev. 2002); *In re Fonke*, 321 B.R. 199, 209 (Bankr. S.D. Tex. 2005).

[15] *In re Ferretti*, 230 B.R. 883, 886-87 (Bankr. S.D. Fla. 1999) *subsequently aff'd sub nom. Dibraccio v. Ferretti*, 268 F.3d 1065 (11th Cir. 2001).

[16] Fed. R. Bankr. P. 1019(2) (setting forth "[a] new time period for filing a motion under § 707(b) or (c), a claim, a complaint objecting to discharge, or a complaint to obtain determination of dischargeability of any debt . . . under Rules 1017, 3002, 4004, or 4007," unless the case was converted from Chapter 7 to Chapter 11, 12, or 13 and

adhering to the majority view refused to allow the Chapter 7 trustee to object to the debtor's claimed exemptions despite the convening of a meeting of creditors in the converted case.

The Federal Rules of Bankruptcy Procedure were amended in 2010 to reflect the minority view, rendering the prior disagreement irrelevant.[17] The trustee in a case converted to Chapter 7 from Chapter 11, 12, or 13 now has a new thirty day period in which to object to a debtor's claimed exemptions. Fed. R. Bankr. P. 1019(2)(B). This is so unless the case was converted more than one year after confirmation, Fed. R. Bankr. P. 1019(2)(B)(i), or the case was previously pending in Chapter 7 and the time to object had expired in that case, Fed. R. Bankr. P. 1019(2)(B)(ii).

The record indicates the 341 meeting in the Chapter 7 case was convened on August 6, 2014 and completed on August 29, 2014. Accordingly, Plaintiff had until September 29, 2014 to object to Debtor's claimed exemptions.[18]

Plaintiff filed this adversary proceeding on October 21, 2014, and the first mention of the exemption objection came on November 25, 2014, in Plaintiff's Objection to Defendant's Motion to Dismiss and Plaintiff's Motion for Summary Judgment. That date was well beyond thirty days after the last date of the meeting of creditors. Plaintiff's objection therefore fails as untimely.

### 2. *Plaintiff's Claim Fails as Moot*

Assuming Plaintiff had filed the objection within thirty days after the last day of the creditors meeting in the converted case, the objection would still fail as moot. In *In re Brown*, the Chapter 7 trustee objected to the debtor's pre-conversion claim of a homestead exemption.[19] The case was decided three years before the Rules were clarified to read that the trustee in a converted case has thirty days from the last day of the creditors meeting in which to file objections to exemptions. Nonetheless, the court adopted the minority view now reflected in Rule 1019(2).[20] Despite the Trustee's timeliness, the objection was rendered moot due to confirmation of the debtor's Chapter 13 plan.[21]

In the words of that court, "a subsequent Chapter 7 trustee's objection to a claimed exemption in a converted Chapter 7, no matter how valid, would be meaningless if the debtor had in the prior Chapter 13 already removed the subject property from the bankruptcy estate" by way of the revesting provision of Section 1327(b).[22] Although the objection "would have been

---

subsequently reconverted to a case under Chapter 7, in which case the time periods mentioned "expired in the original chapter 7 case").

[17] *See generally In re Tobkin*, 2012 WL 2196139 at *1 (Bankr. S.D. Fl. 2012).

[18] Debtor did not amend his Schedule C to reflect an exemption in the proceeds from sale after the date of conversion. The Court notes that, had the Debtor amended Schedule C, Plaintiff would have had thirty days after such amendment was filed to object to Debtor's claimed exemptions. Fed. R. Bankr. P. 4003(b)(1). Furthermore, as Debtor's ownership of the homestead and claimed exemption were listed in the original schedules, Plaintiff appears to have been in possession of all facts necessary to make a timely objection if he believed that there were grounds to do so.

[19] 375 B.R. 362, 366 (Bankr. W.D. Mich. 2007).

[20] *Id.* at 370.

[21] *Id.* at 383.

[22] *Id.* at 378.

successful had Section 1327(b) not intervened," the court refused to allow the objection to go forward.[23]

While *Brown* involved somewhat different facts given the trustee's timely objection, this Court is persuaded by its reasoning. Subject to the revesting provisions in the Debtor's Amended Plan and Section 1327(b), neither the home nor the proceeds were property of the Chapter 7 estate. It follows that they are no longer subject to administration by this Court and Plaintiff's objection must fail as moot.[24]

### 3. Plaintiff's Claim Fails Because the Home Was Not Estate Property at the Time of the Post-Confirmation Sale

Finally, Plaintiff's objection also fails because the home, which was claimed as exempt on the date of Debtor's bankruptcy, was not property of the estate. Exempt property is not liable for the debtor's pre-petition debts, subject to certain exceptions not relevant here. 11 U.S.C. § 522(c). *See also In re Cunningham*, 513 F.3d 318, 323 (1st Cir. 2008) (the creditor's "claim that the post-petition voluntary sale of the exempt property makes the proceeds of the sale available to satisfy a nondischargeable pre-petition debt is at odds with the immunizing effect of § 522(c)"). Property that is properly exempted on the date of bankruptcy "is essentially removed from the bankruptcy process." *In re Reed*, 184 B.R. 733, 738 (Bankr. W.D. Tex. 1995).

Another line of cases, however, takes the view that the "essential element of the exemption must continue in effect even during the pendency of the bankruptcy." *In re Frost*, 744 F.3d 384, 387 (5th Cir. 2014) (quoting *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 301 (5th Cir. 2001)). These cases impose a continuing duty upon a debtor to maintain the status quo of exempt property during the pendency of the bankruptcy case. Otherwise, the trustee is entitled to administer assets that were properly claimed exempt as of the petition date.

In *Zibman*, proceeds from a pre-petition homestead sale, which were exempt property on the petition date, became property of the bankruptcy estate upon the post-petition expiration of the Texas six-month safe-harbor for homestead proceeds. 268 F.3d. at 305; Tex. Prop. Code Ann. § 41.001(c). In *Frost* the chapter 13 debtor sold his exempt homestead during the pendency of the chapter 13 case and the court found that his failure to reinvest the proceeds in a Texas homestead within the six months allowed under the Texas exemption statute caused those sale proceeds to become property of the bankruptcy estate. 744 F3d. at 387. The more recent case of *In re Hawk* followed the logic of *Frost* with respect to funds removed from an exempt IRA account. 524 B.R. 706 (Bankr. S.D. Tex. 2015). There, the court found funds that were removed from an exempt IRA account during the pendency of the debtor's chapter 7 bankruptcy case for living expenses automatically became property of the bankruptcy estate once they lost their exempt status under state law. *Id*. at 710-11. ("Once the Liquidated IRA Funds became non-exempt, the Funds automatically became property of the estate and the Chapter 7 Trustee was immediately entitled to them.").

---

[23] *Id.* at 383.

[24] *See In re Brown* at 382.

The *Zibman* and *Hawk* cases were cases under chapter 7 and the assets were bankruptcy estate property. The *Frost* case was a chapter 13 case and the Debtor sold his exempt homestead during the pendency of the chapter 13 proceeding. The instant case appears similar to *Frost* but for the post-sale conversion to chapter 7. In *Frost*, it was the chapter 13 trustee who sought turnover of sale proceeds as opposed to the post-conversion chapter 7 trustee in this case.

But, they are not similar in the very important respect that, in *Frost*, the sale occurred pre-confirmation and the debtor's chapter 13 plan also specifically provided that "[u]pon confirmation of the plan, all property of the estate shall not vest in the Debtor(s), but shall remain as property of the estate subject to the automatic stay of 11 U.S.C. §362." (W.D. Tex., Case No. 09-54674-rbk, docket #54). Thus, in *Frost*, the property was bankruptcy estate property at the time of the sale and the proceeds remained property of the estate following confirmation. Here, the sale took place post-confirmation and the Debtor's plan, in accord with 11 U.S.C. § 1327(b), provided for post-confirmation vesting in the Debtor. The Debtor's homestead was not estate property at the time of the sale and the proceeds were not estate property at the time of their disposition.

The Tenth Circuit case of *U.S. v. Richman (In re Talbot)*, 124 F.3d 1201 (10th Cir. 1997), precludes the application of principles relied on in the *Zibman-Frost* line of cases to the case at bar. *Talbot* held that the debtor's home, which was part of the pre-confirmation chapter 13 estate, was no longer property of the bankruptcy estate under Section 1327(b) after confirmation of the debtor's chapter 13 plan. *Id*. at 1205. Accordingly, Plaintiff's claim must fail because the home was not estate property at the time of the post-confirmation sale.

## IV. CONCLUSION

Based on the foregoing reasoning, it is therefore

**ORDERED** that *Plaintiff's Motion for Summary Judgment* is DENIED; and it is further

**ORDERED** that *Defendant's Motion to Dismiss* is GRANTED; and it is further

**ORDERED** that *Plaintiff's Objection to Debtor's Claimed Exemption* is OVERRULED.

Dated this ___16th___ day of March, 2015.

                                        **BY THE COURT:**


                                        _____
                                        Howard R. Tallman, Judge

                                        United States Bankruptcy Court

10